## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 18-21993 (JJT) |
| | ) | | |
| RICHARD P. SIMONE, | ) | CHAPTER | 7 |
| Debtor. | ) | | |
| | ) | | |
| ANDREW WOOLF, ANDREW KATZ, | ) | | |
| and ELENA VAGNEROVA, | ) | ADV. PRO. NO. | 19-02005 |
| Plaintiffs | ) | | |
| V. | ) | RE: ECF Nos. | 515, 520, 521, 532 |
| | ) | | |
| RICHARD P. SIMONE, | ) | | |
| Defendant. | ) | | |
| | ) | | |

## RULING ON THE DEFENDANT'S MOTION
## FOR RECONSIDERATION OF THE GRANTING OF SUMMARY JUDGMENT

I.    INTRODUCTION

This Court previously found that the Plaintiffs were entitled to judgment as a matter of

law on all Counts of their Complaint (ECF No. 1), thereby declaring as non-dischargeable the

indebtedness of the Defendant to the Plaintiffs in the principal amount of $495,000 and denying

the Debtor's discharge. *See* Memorandum of Decision on Plaintiffs' Motion for Summary

Judgment ("Memorandum"), ECF No. 515. The Defendant now asks this Court to reconsider its

Memorandum and raises five arguments in support thereof. *See* Motion for Reconsideration

("Motion"), ECF No. 520.

The Plaintiffs objected to the Motion, assailing the Defendant's filing, among other

reasons, as merely an attempt to relitigate issues that have been expressly analyzed and decided

by the Court. *See* Objection, ECF No. 532. The parties advanced their arguments at a hearing on

the Motion and the Plaintiffs' Objection, and at the conclusion of the hearing, the Court took the

matter under advisement. ECF No. 541.

## II.    DISCUSSION

In the Second Circuit, a Motion for Reconsideration is decided under a strict standard and

is generally denied unless the movant identifies "controlling decisions or data that the court

overlooked" in rendering its decision—"matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, *Inc.,* 70 F.3d

255, 257 (2d Cir. 1995) (citations omitted). This strict standard is intended "to dissuade

repetitive arguments on issues that have already been considered fully by the court." *Adams v.

U.S.*, 686 F.Supp. 417, 418 (S.D.N.Y. 1988).

Applying this strict standard, the Court will address each of the Defendant's arguments in

turn.

### A.  Denial of Discharge under 11 U.S.C. § 727(a)(4)(A)

Count VI of the Plaintiffs' Complaint sought to deny the Defendant's discharge under 11

U.S.C. § 727(a)(4)(A) based upon the Defendant's "false representations and omissions, and the

oath he took concerning the veracity of his submissions," made in connection with his

bankruptcy case. Complaint, p. 79. The Plaintiffs' Motion for Summary Judgment further argued

that the Defendant "made numerous false statements under oath in this record [when he] lied in

his schedules, concealed income and falsified loans that don't exist." ECF No. 107 ("MSJ"), p. 9.

Notwithstanding the foregoing, the Defendant now argues that the Plaintiffs' claims under 11

U.S.C. § 727(a)(4)(A) "were not properly before the Court" and that the Court "overlooked the

fact that the plaintiffs had improperly sought to bring new claims that were factually unrelated to

the 299-paragraph complaint, in their motion for summary judgment." Motion, p. 2.

2

The caption of the Plaintiffs' Complaint indicates that Plaintiffs sought a denial of the Defendant's discharge under 11 U.S.C. § 727(a)(4)(A). Complaint, p. 1. Count VI of the Complaint is entitled, "Non-Dischargeability of Debts Owed to Plaintiffs Under Section 727(a)(4)(A) of the Bankruptcy Code." *Id.*, p. 79. Plaintiffs' prayer for relief in their Complaint requests that the Court "deny the Debtor's discharge under Bankruptcy Code §§ 727(a)(3) and 727(a)(4)(A)." *Id.* In his Answer to the Complaint, the Defendant responded to the allegations set forth in Plaintiffs' claim under Section 727(a)(4)(A). *See* ECF No. 31, ¶¶ 316–18. The Defendant unequivocally acknowledged that "[t]he Plaintiffs' Complaint certainly places Simone on notice of the claims against him, and in that sense, the Complaint is more than adequately (and painstakingly) plead." *See* ECF No. 10, Defendant's Memorandum of Law in Support of Motion to Strike Various Allegations of the Complaint, p. 10. But the Defendant now argues that reconsideration is warranted because "[t]he plaintiffs' claims under 11 U.S.C. § 727(a)(4)(A) were not properly before the court."

"[W]hen considering a motion for summary judgment, facts in addition to those asserted in the complaint can form the basis for an argument that there is no material fact in dispute that would prevent judgment as a matter of law." *Gordon v. Gordon*, 170 Conn. App. 713, 722–23 (2017). Indeed, Rule 56 of the Federal Rules of Civil Procedure provides that on summary judgment, parties may support their factual positions by relying on matters outside of the complaint. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.").

Each material fact related to the Plaintiffs' Section 727(a)(4)(A) claim set forth in their Local Rule 56(a)1 Statement of Undisputed Material Facts and supported by evidence was not controverted by the Defendant's Local Rule 56(a)2 Statement or any evidence produced therewith. Further, the Court indicated that the Defendant's objections to Plaintiffs' material facts supporting Count VI were overruled. *See* Memorandum, fn. 3.  The Court's Memorandum found that the Plaintiffs provided substantiating and uncontroverted evidence of the Defendant's numerous false oaths made in connection with his Bankruptcy case and that there were no genuine issues of material fact as to the Defendant's justification for making the false statements on his Petition. Memorandum, pp. 74–76.

The Defendant's Motion fails to identify any controlling authority or other facts that the Court overlooked in making such a finding, and as such, there is no basis to alter the Court's original conclusions set forth in the Memorandum.

### B.  Dischargeability under 11 U.S.C. § 523(a)(2)(B)

Count II of the Plaintiffs' Complaint sought a finding that the debt owed to them was nondischargeable as a debt obtained by a materially false written statement concerning the Defendant's financial condition pursuant to 11 U.S.C. § 523(a)(2)(B). In granting summary judgment as to Count II, the Court found that "the material facts not in genuine dispute establish by clear and convincing evidence that the Plaintiffs' Investment monies constitute a debt for money obtained by a materially false and intentionally deceptive written statement of financial condition upon with the Plaintiffs reasonably relied." Memorandum, p. 55. The Defendant now argues that "there was inadequate proof, on summary judgment, to compel a conclusion that there was an intent by the Defendant, in a writing, to deceive the plaintiffs with respect to his overall financial health."

4

The Defendant specifically argues that the Court overlooked certain facts: (1) surrounding the Defendant's "belief" that he could work through certain pricing issues and the discrepancies between the pricing the Defendant disclosed to the Plaintiffs in the written Term Sheet and the pricing on the various Contracts/unit reservation documents; and (2) related to the Term Sheet's provision regarding the ability/intent to obtain financing for 70% of the Investment. What has been overlooked here is not the fact that the Defendant believed he could work out the pricing issues or that it was not the Defendant in his individual capacity that would finance the Investment, but instead, what has been overlooked is that the Court has previously addressed each of these issues in its Memorandum.

With respect to the pricing issues, the Defendant's "belief" that these issues could be resolved was just that—unsupported speculation by the Defendant. In the Motion, the Defendant identifies various paragraphs in his Local Rule 56(a)2 Statement of Additional Material Facts (ECF No. 236) that represent those supposed overlooked facts that might somehow alter this Court's conclusions. Many of the thirteen paragraphs referenced are simply void of any evidentiary support. *See* ECF No. 236, ¶¶ 9, 10, 12, 19, 20.[1] The remaining contentions have otherwise been considered by the Court in its initial deliberation in connection with the MSJ, and had they not, would nonetheless not alter the Court's conclusions. For example, two of the paragraphs Defendant cites to in support of his "belief" rely on inconsistent versions of the same purported contract—each signed by a different Damac representative, dated a month apart, and with inconsistent company markings. The Defendant failed to meet his burden at the summary judgment stage to produce substantial controverting evidence demonstrating the existence of a

---

[1] A non-movant may not defeat a properly supported motion for summary judgment by relying on self-serving and conclusory statements concerning the true nature of the facts, *see Wyler v. U.S.*, 725 F.2d 156, 160 (2d Cir. 1983), but rather, it "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (*quoting D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1996).

material factual dispute, and yet relies on the same facts alleged therein to argue that they will somehow now alter the Court's conclusions.

As to the Defendant's argument that "[t]he Court overlooked that the Defendant did not represent that he would be applying for the mortgage loan as an individual borrower," and that "ultimately the property would be held in a company name (and therefore financed by a company)," the Memorandum underscores that "he (*with the Plaintiffs*) would . . . finance $3.5 million for the Investment" and that "in addition to . . . making contributions towards the 'progress payments,' the Defendant . . . was to enter into sales agreements and sign purchase contracts on the Plaintiffs' behalf, *under the guise of the purported company, Tribeca.*" Memorandum, pp. 54, 58–59 (emphasis added). Here again, the Court has previously analyzed and addressed this fact.

The Court's conclusions were based upon the material facts not in genuine dispute that demonstrated the Defendant provided the Plaintiffs with the Term Sheet and the various contracts/unit reservations knowing there were materially false statements contained therein, or at least acting with reckless indifference as to the truth of the information therein, with the intent to deceive. The Defendant has otherwise failed to identify any facts that the Court may have overlooked in addressing those issues, and in turn, has failed to successfully argue that substantive reconsideration is warranted.

C. Dischargeability under 11 U.S.C. § 523(a)(2)(A)

Count I of the Plaintiffs' Complaint sought a finding that the debt owed to them was nondischargeable as one obtained by false pretenses, a false representation, or actual fraud based upon the Defendant's false representations "before he stole [the Plaintiffs'] money, while he was stealing their money and after he stole their money," as well as the false representations made "in

judicial proceedings to perpetuate the scheme and cover up the fraud." MSJ, p. 7. In its

Memorandum, the Court found, without reaching the actual fraud prong of Section 523(a)(2)(A),

that there was an absence of material fact in dispute that the debt owed the Plaintiffs was one

obtained by both false pretenses and false representations. The Defendant now argues that the

Court overlooked various facts that, had they been considered, might have led to a different

conclusion, and also weighed evidence and made credibility determinations when ruling on

Plaintiffs' Motion for Summary Judgment.

      With respect to the false pretenses provision of Section 523(a)(2)(A), the Court found

that the Plaintiffs clearly and convincingly met their burden on summary judgment

demonstrating that the Defendant, through a series of knowing and willful events, activities, and

communications, created a false and misleading understanding of the purported Investment by

which the Plaintiffs were wrongfully induced to advance money. As set forth in the

Memorandum, false pretenses are a series of events that, *when considered collectively,* create a

false and misleading understanding of a transaction that, in turn, wrongfully induces a creditor to

transfer property. The Court's Memorandum detailed the series of these collective oral and

written misrepresentations and failures by the Defendant to disclosure material facts—all of

which were supported by Plaintiffs' evidence and uncontroverted by the Defendant.

      In addition to arguing that the Court overlooked the fact that *some* of the undisputed

material facts the Court relied on were not, in fact, material (*i.e.,* the Investment shifting from the

16th floor to the 19th floor and that the "Burjside Boulevard" went through modifications

including a name change), the Defendant also argues that the Court overlooked the fact that *some*

of the Plaintiffs' Investment monies were authorized to go to Mr. Bode and that the Court failed

to consider information "about the transfer of the plaintiffs' monies to Damac (through the 2,000,000 AED Manager's Check and the 710,000 AED Bode check)."[2]

The Court's finding was not based solely on the fact that the Defendant initially told Plaintiffs that their Investment related to 16th floor but then later their money was allegedly put toward the 19th floor. Nor was it based solely on the fact that some of the Investment money was knowingly wired directly to Mr. Bode while other of the Investment money was sent to Mr. Bode "by supplying Bode's account number, in the same manner as the New York Supreme Court previously found the Defendant to employ when he pled guilty to Attempted Grand Larceny in the Third Degree."  The findings were not based solely on the fact that it was the Defendant's "understanding and belief that the [2,000,000 AED Manager's Check] came from" a combination of funds from Plaintiffs Katz and Woolf even though the Defendant stated that "[he] did not handle plaintiff's [Katz's] investment funds so [he] did not make any payments on his behalf," or that "it is believed that the [710,000 AED] Bode check is composed of funds from Plaintiffs Woolf and Vagnerova" when the Defendant previously testified that Bode gave the Defendant "all the money that we had wired to him" and that "all the money that was wired to Bode were reconciled with me."

It was the totality of these events, activities, and ever-changing and inconsistent stories, considered collectively, that formed the basis for the Court's finding that the Defendant created a false and misleading understanding of the purported Investment by which the Plaintiffs were wrongfully induced to advance money. It was these same undisputed and material facts, "as well as the Defendant's numerous omissions of facts that are riddled throughout this [summary

---

[2] The Defendant further argues that the Court overlooked the Defendant's "belief" that he could resolve the pricing issues and that the Defendant did not intend to apply for a mortgage in his individual capacity. The Court addressed these issues in the immediately preceding section, which findings are further incorporated herein.

judgment] record," that demonstrated that the Defendant also intended to deceive the Plaintiffs by making false representations. The Defendant's Motion fails to identify any controlling authority or other facts that the Court overlooked in making those findings, and as such, there is no basis to alter the Court's original conclusions set forth in the Memorandum.

D.  Dischargeability under 11 U.S.C. § 523(a)(4)

Count III of the Plaintiffs' Complaint sought a finding that the debt owed to them was nondischargeable as one obtained through fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4). The Court's Memorandum declared as non-dischargeable the indebtedness of the Defendant to Plaintiffs based upon a finding that the Defendant committed a defalcation while acting in a fiduciary capacity. *See* Memorandum, pp. 55–62. The Defendant now argues that the Court "ruled on a provision of that section that was not advocated by the plaintiffs in their motion for summary judgment." Motion, p. 7. Rather, the Defendant argues that the "plaintiffs contended that the Defendant's conduct constituted embezzlement." Motion, p. 7.

Throughout their Complaint, the Plaintiffs allege numerous facts related to the fiduciary relationship among the parties. *See* Complaint, ¶¶ 54–68, 78–80, 86, 110, 296, 299. Plaintiffs indicate that they "filed this adversary proceeding asserting that their claims against the Debtor qualify as nondischargeable under 11 U.S.C. § 523 because the Debtor fraudulently acquired and retained Plaintiffs' investment money through false representations made in writing, *in a fiduciary capacity*, and in a willful and malicious manner." *See* ECF No. 106, Plaintiffs' Findings of Fact and Conclusions of Law, p. 3 (emphasis added); *see also id.*, ¶¶ 240–42. The Plaintiffs' MSJ further argues that the Defendant "gained access to Plaintiffs' money through his personal relationships with each of the Plaintiffs," and as he continued to lie to the Plaintiffs

about where and to whom the Investment money went, "he still refused to show the path of the

money." MSJ, p. 8. It is ostensibly the single mention of "embezzlement" in the Plaintiffs' MSJ,

outside of quoting the statutory language of Section 523(a)(4), that forms the basis of the

Defendant's argument that the Plaintiffs "contended that the Defendant's conduct constituted

embezzlement." *See* MSJ, p. 8 ("The Debtor had motive, opportunity, intent, the absence of

mistake, surrounding lies and no other credible explanation other than embezzlement.").

  In addition to the Court's finding that there were no material facts in dispute establishing

that the Defendant committed a defalcation while acting in a fiduciary capacity, the material

facts not in dispute further establish that the Plaintiffs' Investment monies were also obtained by

embezzlement. "Embezzlement, for the purposes of Section 523(a)(4), is defined by federal

common law as the fraudulent appropriation of property by a person to whom such property has

been entrusted, or into whose hands it has lawfully come." *In re Budnick*, 469 B.R. 158, 176

(Bankr. D. Conn. 2012) (internal quotations omitted). "More precisely, embezzlement consists of

three elements: '(1) the debtor rightfully possessed another's property; (2) the debtor

appropriated the property for use other than the use for which the property was entrusted; and (3)

the circumstances implied a fraudulent intent.'" *In re Dybowski*, 2012 WL 1945503, at *14

(Bankr. D. Conn. 2012) (citations and quotations omitted). "[F]raudulent intent may be

determined from the facts and circumstances surrounding the act." *In re Carrano*, 530 B.R. 540,

558 (Bankr. D. Conn. 2015).

  The Defendant here does not dispute any of the Court's findings in its Memorandum, yet

it is these findings that establish, by a preponderance of the evidence, that the debt owed to the

Plaintiffs is one also obtained by embezzlement. Specifically, the Court's "distilling" of the core

and material undisputed facts establish that: (1) the Defendant was entrusted with the Plaintiffs'

Investment monies totaling $495,000, *see* Memorandum, ¶¶ 1, 3 at pp. 41–42; (2) the Defendant deployed and concealed the use of the Plaintiffs' funds at material variance with the purpose of the stated Investment, by diverting money to either himself, colleagues, or other investors, *id.* at ¶ 3; and, (3) the Defendant's acts directed to the Plaintiffs' Investment were patently fraudulent, conscious, deliberate, willful, and malicious, *id.* at ¶¶ 1, 6, 7.

Whether under the embezzlement provision of Section 523(a)(4), or based upon the Defendant's defalcation while in a fiduciary capacity, the Plaintiffs have established that the core, dispositive, material facts not subject to genuine dispute support the Court's finding that the Plaintiffs are entitled to judgment as a matter of law as to Count III of the Complaint. The Defendant has failed to identify any controlling decisions or data that the Court overlooked that might reasonably be expected to alter the Court's conclusion.

E.   Dischargeability under 11 U.S.C. § 523(a)(6)

Count IV of the Plaintiffs' Complaint sought a finding that the debt owed to them was nondischargeable as one obtained by willful and malicious injury by the debtor to another entity or to the property of another entity. The Defendant now argues that the Court, in finding that the Defendant "wholly failed to present any specific, substantiated, and controverting material facts, supported by verifiable and credible evidence, that would defeat the Plaintiffs' properly supported claim,"[3] nonetheless "made the linchpin of its argument the wiring of plaintiffs' monies to Mr. Bode" without accounting "for the fact that Mr. Woolf specifically authorized a wire transfer of his funds to Mr. Bode, and Ms. Vagnerova directed her sister to wire transfer her funds directly to Mr. Bode." Motion, at p. 7.

---

[3] Memorandum, p. 65.

The Court's Memorandum underscores that its conclusions were not solely based upon the undisputed fact that the Defendant "acted voluntarily, intentionally, and deliberately to induce the Plaintiffs to wire the Investment monies . . . to his friend Stefan Bode, by supplying Bode's account number, in the same manner as the New York Supreme Court previously found the Defendant to employ," but it was the totality of the "undisputed facts previously discussed by the Court with respect to Plaintiffs' Counts I–III, establishing myriad false, fraudulent, misleading, and intentional statements, acts, and omissions," that formed the basis for the Court's finding that the debt owed to the Plaintiffs was one arising from the Defendant's willful and malicious actions. *See* Memorandum, pp. 64–65. What's more, it cannot be said that the Court failed to account for the fact that Ms. Vagnerova wired her Investment monies directly to Mr. Bode, when the Court found that very fact to be material and not in genuine dispute. *See* Memorandum, at p. 10 ¶ 24.

With respect to the Court's ruling on the claim of dischargeability under 11 U.S.C. § 523(a)(6), the Defendant has failed to identify any controlling decisions or data that the Court overlooked that might reasonably be expected to alter the Court's conclusion.

III.    CONCLUSION

After an extensive review of the parties' summary judgment factual submissions and related briefs, the record of argument, and the Defendant's Petition, related Schedules and Statements of Financial Affairs, and guided by the Supreme Court's conclusion that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" the Court found that the Plaintiffs met their burden and were entitled to summary judgment as to all Counts of the Complaint. See *Scott v. Harris*, 550 U.S. 372, 379–381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The Plaintiffs presented substantial amounts of credible and logically uncontroverted evidence demonstrating that the there was no genuine dispute of material fact with respect to each element of every cause of action, thus meeting their initial burden. The burden then shifted to the Defendant to put forth *substantial* evidence—not merely colorable evidence, speculation or a scintilla of evidence in support of his position—that there are triable disputed facts. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). And while the Defendant stretched logic, credibility, and common sense to assail the Plaintiffs' facts, many of the dispositive and undisputed facts were established by the Defendant's own admissions, the course of inconsistent and evasive explanations for the path of the Investment, and incontrovertible documents.  The Defendant failed to demonstrate that there were triable material disputed facts, thereby entitling the Plaintiffs to judgment as a matter of law on all Counts of the Complaint.

In seeking reconsideration, the Defendant has again failed to make the requisite showing—here, by either identifying overlooked facts or authority that, if considered, would reasonably be expected to alter the conclusions reached in the Court's Memorandum—that would entitle him to substantive reconsideration. Accordingly, for all of the foregoing reasons, the Defendant's Motion is hereby DENIED and the Plaintiffs' Objection is hereby SUSTAINED.

**IT IS SO ORDERED** at Hartford, Connecticut this 31st day of March, 2022.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*