**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | CASE No.    18-21993 (JJT) |
| ) | |
| RICHARD P. SIMONE, ) | CHAPTER    7 |
|     Debtor. ) | |
| ) | |
| ANDREW WOOLF, ANDREW KATZ, ) | |
| and ELENA VAGNEROVA, ) | ADV. PRO. NO.    19-02005 |
|     Plaintiffs ) | |
| V. ) | RE: ECF Nos.    549, 568, 570, 571 |
| ) | |
| RICHARD P. SIMONE, ) | |
|     Defendant. ) | |

**SUPPLEMENTAL RULING ON PLAINTIFFS' MOTION**
**FOR SANCTIONS, INCLUDING ATTORNEYS' FEES AND EXPENSES**

I.    INTRODUCTION

In connection with this Court's prior rulings on the Plaintiffs' Motion for Summary Judgment (ECF No. 107) and the interrelated Motion for Sanctions (ECF No. 394) and Motion for Order to Supplement the Record with Evidence of a Prejudicial Discovery Violation (ECF No. 469, together with the Motion for Sanctions, the "Discovery Violation Motions"), this Court found that the Defendant engaged in a "well calculated shedding, non-preservation and/or spoliation of documents [that] impeded the administration of this case, heightened discovery costs, and served to obfuscate critical issues," and that the Defendant's "intentional conduct has impaired, impeded, frustrated and delayed the Plaintiffs' pursuit of their rights and remedies." ECF No. 514, Order Granting Plaintiffs' Motion for Sanctions ("Sanctions Order"). Based upon these findings and the relief requested in the Plaintiffs' Discovery Violation Motions, the Court's Sanctions Order held that an adverse inference at trial was appropriate, and further provided the

Plaintiffs with an opportunity to file a Motion for Attorneys' Fees and Expenses setting forth any supporting billing summaries made in connection with the prosecution of the Discovery Violation Motions.

That Motion for Attorneys' Fees is now pending before this Court. ECF No. 549, ("Motion"). In the Motion, the Plaintiffs seek to recover a total of $182,816.42 in attorneys' fees and expenses from the Defendant based upon the Defendant's failure to produce and preserve, and spoliation of, documents and evidence related to where and to whom the Plaintiffs' collective $495,000 worth of investment monies went. The total fees and expenses sought include $146,295.00 in attorneys' fees billed by Plaintiffs' lead counsel ("Attorney Chase"), $34,634.50 in attorneys' fees billed by Plaintiffs' local counsel ("Attorney Goldman"), and $1,886.92 in costs sought by Attorney Chase.

The Defendant objected to the Motion, arguing that the Plaintiffs are seeking an award of attorneys' fees that is far beyond what reasonably should have been sought in response to the Court's invitation made in connection with the Sanctions Order. ECF No. 568 ("Objection"). Specifically, the Defendant argues that fees for Attorney Chase should be reduced from the $146,295.00 sought under the Motion to $45,000, and that fees for Attorney Goldman should also be reduced by a similar percentage—a reduction that the Defendant argues is warranted based on the Plaintiffs' improper attempt at shifting costs of litigation onto the Defendant.

The Court held a hearing on the Motion and the Defendant's Objection thereto on April 7, 2022. ECF No. 576. At the conclusion of that hearing, the Court took the matter under advisement. For the reasons that follow, the Plaintiffs' Motion is hereby GRANTED, in substantial part as set forth herein, and the Defendant's Objection is hereby OVERRULED, in part. The Plaintiffs are hereby awarded $90,464 in total fees and $1,886.92 in expenses, for a

total award of $92,330.92. While this figure represents a 50% reduction in counsels' requested fees, resulting in attorneys' fees in the amount of $73,147.50 allocated to Attorney Chase and $17,317.25 allocated to Attorney Goldman, in addition to total expenses of $1,886.92 allocated to Attorney Chase, the Court believes it is reasonable and proportionate and represents a fair and equitable apportionment of the incremental expense of efforts to unravel the Defendant's lies, evasions and diversions in discovery.[1]

    II.    DISCUSSION[2]

As set forth in the Sanctions Order, this Court previously found good, sufficient, and compelling cause to grant the Plaintiffs' request for spoliation sanctions, including reasonable attorneys' fees and costs, based upon the Defendant's "feigned, strained and grossly inadequate efforts and excuses for failure to produce documents in this case . . . [that] have occasioned multiple needless discovery disputes, persistent extraction efforts, and the incurrence of significant legal costs and expenses." Sanctions Order at p. 3. The Court's imposition of spoliation sanctions warrants the award of reasonable attorneys' fees and costs to the Plaintiffs, as such an award serves the remedial purpose of making the Plaintiffs whole for the costs incurred as a result of the Defendant's spoliation of evidence and is proportionate to the prejudice the Plaintiffs suffered as a result of the Defendant's non-preservation and non-production of documents during the course of this case. *See Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 381 (D. Conn. 2007). With respect to the imposition of monetary sanctions, these "compensable costs may arise either from the discovery necessary to identify alternative sources

---

[1] The reduction and allocation of these fees is without prejudice to the Plaintiffs' seeking the entirety of their legal fees and costs incurred in connection with any judgment on Count VII of the Plaintiffs' Complaint.

[2] The Court has previously addressed, at length, the factual background and relationship of the parties, the history of their decade-long dispute, and the facts giving rise to the imposition of sanctions in prior rulings. *See* ECF Nos. 514, 515, 561, and 562. The Court presumes the parties' familiarity with the background and facts relevant to the resolution of this Motion.

of information or from the investigation and litigation of the document destruction itself." *Id.* at 381–82 (citation omitted).

As the Second Circuit has emphasized, "a party that disregards its [discovery] obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never been incurred had the party complied with its obligations in the first instance," and the imposition of monetary sanctions compensates the adversary "for costs it should not have had to bear." *Klipsch Grp., Inc. v. ePro E-Com. Ltd.*, 880 F.3d 620, 634 (2d Cir. 2018). Based upon this record, the Court finds that an award of reasonable attorneys' fees and costs, to be paid by the Defendant, is entirely warranted.[3]

The Defendant's inconsistent tales, supplemented with incomplete, inauthentic, and cryptic documentary evidence, have caused the Plaintiffs to expend and waste significant time and effort in attempting to uncover the reality of what happened to their collective $495,000. And although the Defendant assails various discovery efforts taken by the Plaintiffs (and the time billed in connection therewith) as "ill-conceived endeavors," many of these endeavors were the direct result of the multiplicity of the Defendant's lies that created myriad rabbit holes to go down and subsequent dead ends reached. In *Klipsch*, the Second Circuit underscored that

> [w]hen, as a result of an opponent's persistently uncooperative behavior, it appears reasonable *ex ante* to conduct expensive corrective discovery efforts, we see no reason why the party required to undertake those efforts should not be compensated simply because it eventually turned out that the obstructive conduct had hidden nothing of real value to the case. Those costs must be placed on the uncooperative opponent in order to deter recalcitrant

---

[3] Based upon the Court's previous findings of the Defendant's bad faith, misconduct, and conscious disregard of his discovery obligations, the Court finds compelling cause to award reasonable attorneys' fees and costs as a discovery sanction under both Fed. R. Civ. P. 37, made applicable to this proceeding by Fed. R. Bankr. P. 7037, as well as pursuant to the Court's inherent power to manage its own affairs, including the ability to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir. 1998); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002).

>parties from the cavalier destruction or concealment of materials that the law requires them to retain and disclose.

*Klipsch Grp.*, 880 F.3d at 632.

As a result of the Defendant's uncooperative, obstructive, and recalcitrant conduct over the course of this case, the Plaintiffs' supporting billing summaries attached to the Motion, setting forth fees and expenses totaling $182,816.42, detail numerous entries relevant both to time associated to the prosecution of the Discovery Violation Motions and to numerous other discovery abuses. Of the total fees sought, Attorney Chase is seeking fees for discovery-related work performed from June 2019 to March 2022, in the amount of $146,295, representing 325.1 hours billed at an hourly rate of $450. Attorney Goldman is seeking fees for discovery-related work performed from February 2020 to March 2022, in the amount of $34,634.50, representing 61.3 hours billed at an hourly rate of $565. Attorney Chase is also seeking to recover total expenses of $1,886.92 that pertain to "three sets of international calls to Dubai necessitated by the Defendant in his scheme and pattern of misconduct as described by the Court and Plaintiffs in the record."

This Court "has the discretion to award attorneys' fees and costs to the moving party, to the extent reasonable to address any prejudice caused by the spoliation." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055 at *9 (S.D.N.Y. 2018); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (A district court has "considerable discretion" in determining what constitutes a reasonable fee award.). Additionally, "[a]ttorney's fees must be reasonable in terms of the circumstances of the particular case." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). "There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Congregation*

5

*Rabbinical Coll. Of Tartikov, Inc. v. Vill. Of Pomona*, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016) (citations omitted). When crafting an appropriate award, courts "may appropriately take into account various mitigating factors bearing on the degree of sanction that is warranted," including a party's ability to pay the sanction. *Johnson v. N.Y.C. Trans. Auth.*, 823 F.2d 31, 32–33 (2d Cir. 1987); *see also Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992) (collecting cases).

After a review of counsels' billing summaries, and under the particular circumstances and challenges of this case, the Court finds the rates and hours billed by Plaintiffs' counsel to be reasonable, necessary, and appropriate. Indeed, the Defendant did not argue that any specific billing entry was excessive, nor did he challenge the reasonableness of the hourly rates for Attorney Chase or Attorney Goldman. But before this Court determines the amount of a proper award, "a more focused inquiry into the equities of the situation is required." *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1029 (2d Cir. 1979).

In his bankruptcy schedules, the Defendant valued his assets to be worth $9,463.32, claimed an exemption in the entirety of that property, and scheduled unsecured claims totaling $1,433,271.15, including the Plaintiffs' collective claim for $450,000. *See* Defendant's Bankruptcy Case No. 18-21993, BK-ECF No. 1. The Defendant's schedules also list a gross monthly income of $0.00 and monthly expenses of $2,193.00, resulting in a monthly net income of *negative* $2,193.00. *Id.* The Chapter 7 Trustee filed his Report of No Distribution, indicating that he "neither received any property nor paid any money on account of this estate . . . and that there is no property available for distribution from the estate over and above that exempted by law." BK-ECF No. 8. Critically, the Defendant's Discharge Order was vacated due to the filing of the Plaintiffs' Adversary Proceeding (BK-ECF No. 16), where, on summary judgment, the Court ultimately held that the indebtedness of the Defendant to Plaintiffs in the principal amount

of $495,000 was non-dischargeable and denied the Defendant's discharge. *See* Memorandum of Decision on Plaintiffs' Motion for Summary Judgment, ECF No. 515.

Based upon the record in this case, and considering the Defendant's alleged dire financial standing, it is beguiling as to how the Defendant supports his core living expenses and his extravagant indulgences. For that reason, the Court has reservations in awarding the full amount of attorneys' fees sought in the Motion. In the exercise of its discretion, consistent with applicable law, and after full review and deliberations based on this record, this Court believes that an equitable adjustment to the requested fees is fair and appropriate. The Court finds that a total award of $92,330.92, consisting of $90,464 in total attorneys' fees and $1,866.92 in expenses, is reasonable, necessary, and proportionately related to discovery harms measured by the Court. As some of the legal expenses could have been mitigated by Plaintiffs' earlier efforts to secure the imposition of adverse inferences, the equitable adjustment herein is warranted.[4]

### III. CONCLUSIONS

The Defendant has thrived on evasions and inconsistent positions and has baited the Plaintiffs and their counsel into a war of discovery attrition and frustration. His extreme and patent discovery misconduct has rendered this case expensive and difficult to prosecute and has forced the Plaintiffs on a wild goose chase that only validated this Court's conclusion that the Defendant did not preserve or produce a shred of reliable evidence demonstrating where the Plaintiffs' money went.

As such, and for the reasons set forth above, the Plaintiffs are hereby awarded spoliation sanctions of $90,464 in attorneys' fees and costs of $1,886.92 for the incremental harm reasonably attributable to the Defendant's discovery abuses. In the Court's opinion, Plaintiffs'

---

[4] In fact, early effort to seek the imposition of adverse inferences here would have likely diminished these legal fees.

counsels' persistent and dogged pursuit of the truth herein has thereby been adequately valued, compensated, and recognized by this sanction. Accordingly, it is hereby:

**ORDERED**: That the Plaintiffs' Motion for Attorneys' Fees is hereby GRANTED, in substantial part as set forth herein; it is further

**ORDERED:** That the Defendant's Objection is hereby OVERRULED, in part as set forth herein; it is further

**ORDERED:** That the Plaintiffs are awarded $90,464 in total attorneys' fees, with $73,147.50 allocated to Attorney Chase and $17,317.25 allocated to Attorney Goldman, and $1,886.92 in expenses awarded to Attorney Chase, for a total award of $92,330.92; it is further

**ORDERED:** That this award shall be set forth in connection with any final judgment sought or issued in this case; and it is further

**ORDERED:** That the Defendant shall appear and show cause, at a hearing to be set by the Court, as to his ability to pay this sanction and to consider, in light of his relevant current financial circumstances, whether the Defendant will be compelled to pay all or some of such fees and costs within a date certain. *See White v. General Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir. 1990), c*ert. denied*, 498 U.S. 1069 (1991) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."); *see also Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) (Courts exercise "discretion to provide [the subject of a motion for sanctions] the opportunity to speak to the very court that is about to pronounce judgment.").

**IT IS SO ORDERED** at Hartford, Connecticut this 3rd day of June 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut