**kUNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: ) | Case No. 18-21993 (JJT) |
| ) | |
| RICHARD P. SIMONE, ) | |
|     Debtor. ) | Chapter 7 |
| ) | |
| ANDREW WOOLF, ANDREW KATZ, ) | |
| And ELENA VAGNEROVA ) | |
|     Plaintiffs, ) | Adv. Pro. Case No. 19-02005 (JJT) |
| ) | |
| v. ) | |
| ) | RE: ECF No. 682 |
| RICHARD P. SIMONE ) | |
|     Defendant. ) | |

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO HOLD DEFENDANT IN CONTEMPT FOR WILLFUL VIOLATION OF COURT ORDER**

    This Adversary Proceeding began when the plaintiffs, Andrew Woolf, Andrew Katz, and Elena Vagnerova ("Plaintiffs") commenced suit against the Chapter 7 bankruptcy debtor and defendant, Richard P. Simone ("Defendant") alleging that Defendant defrauded Plaintiffs by inducing them to invest $495,000 with Defendant for what they believed was the purchase of an entire floor in a preconstruction building in Dubai. The Plaintiffs allege that the entire investment scheme was a fraud perpetrated by Defendant given that the real estate deal never occurred, and Plaintiffs never received a refund of their initial investment.

    In the course of this Adversary Proceeding, the Court has ruled on Plaintiffs' Motion for Sanctions (ECF No. 394, the "Sanctions Motion") and Plaintiffs' Motion for Summary Judgment (ECF No. 107, the "Summary Judgment Motion"). In its Memorandum of Decision on Plaintiff's Motion for Summary Judgment (ECF No. 505, the "Summary Judgment Decision"), the Court granted summary judgment for Plaintiffs on the first six counts of the Complaint as to liability

only. Plaintiffs did not seek summary judgment on the final, seventh count and thus that cause of action remains part of the case. In their Sanctions Motion, Plaintiffs sought an award of attorney's fees for Defendant's spoliation of material evidence over several years that Plaintiffs argued would have further supported Defendant's liability for the Dubai fraud scheme, and would have rebutted his shifting explanations on the path of Plaintiffs' investment funds. The Court awarded sanctions to Plaintiffs for Defendant's spoliation of evidence in the form of attorneys' fees in the amount of $92,330.92 and ordered Defendant to pay the award to Plaintiffs in full within forty-five days (ECF No. 514, the "Sanctions Order" and ECF No. 600, the "Sanctions Award").

Before the Court is Plaintiffs' Motion for Contempt (ECF No. 682, the "Contempt Motion") by which Plaintiffs seek an order holding Defendant in civil contempt for his failure to comply with the Court's Sanctions Order and incarcerating Defendant until such time as he is able to purge his contempt. Defendant opposed the Contempt Motion (ECF No. 685, the "Opposition"), arguing that Defendant's appeal of the Sanctions Order demonstrated that he had not willfully disregarded the Order and, further, that he would not be able to earn money to pay the attorney's fees to Plaintiffs if he were incarcerated.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the lengthy background of this case, most of which is discussed in the Court's Summary Judgment Decision.

### A. Plaintiffs' Adversary Proceeding

On December 5, 2018, Defendant filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[1] On March 15, 2019, Plaintiffs commenced the instant

---

[1] The United States Bankruptcy Code is codified under Title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

Adversary Proceeding by Complaint seeking a determination of the dischargeability of certain debts or, in the alternative, to deny Defendant's discharge. Plaintiffs' Amended Complaint (AP-ECF No. 446) consists of the following seven counts:

1. non-dischargeability of debts owed to Plaintiffs under 11 U.S.C. § 523(a)(2)(A);
2. non-dischargeability of debts owed to Plaintiffs under 11 U.S.C. § 523(a)(2)(B);
3. non-dischargeability of debts owed to Plaintiffs under 11 U.S.C. § 523(a)(4);
4. non-dischargeability of debts owed to Plaintiffs under 11 U.S.C. § 523(a)(6);
5. non-dischargeability of debts owed to Plaintiffs under 11 U.S.C. § 727(a)(3);
6. non-dischargeability of debts owed to Plaintiffs under 11 U.S.C. § 727(a)(4)(A); and
7. entry of civil judgment in favor of Plaintiffs.

On March 20, 2019, the Court entered an order granting a discharge to Defendant under 11 U.S.C. § 727. That same day, in consideration of Plaintiffs' Adversary Proceeding, the Court vacated Defendant's discharge.

In the course of this Adversary Proceeding, Plaintiffs filed three motions that bear on the issues presently before the Court: the Sanctions Motion, the Summary Judgment Motion, and the Contempt Motion. The Court will discuss the relevant background of these motions as it relates to the civil contempt order sought by Plaintiffs.

### 1. Plaintiffs' Motion for Sanctions

On September 24, 2020, Plaintiffs filed their Sanctions Motion. Plaintiffs sought sanctions against Defendant under Rules 37(b)(2) and 37(e) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7037 of the Federal Rules of Bankruptcy Procedure. Plaintiffs asserted that Defendant "lied about nonexistent evidence, []

3

concealed and destroyed evidence, and . . . failed to preserve electronically stored information ("ESI") in his possession custody and control" and delineated 125 categories of material evidence that Defendant allegedly withheld or destroyed. Sanctions Motion at 1, 7–14. Plaintiffs sought attorney's fees as well as an adverse inference instructing any fact finder at trial that it must presume the spoliated evidence was unfavorable to Defendant.

On February 8, 2022, the Court granted Plaintiffs' Sanctions Motion (ECF No. 514). The Court's decision was based on Defendant's inability to produce any material documents relevant to Plaintiffs' investment of $495,000 in the Dubai real estate deal. The Court found Defendant's "feigned, strained and grossly inadequate efforts and excuses for failure to produce documents" that are "customarily and responsibly retained and preserved for an Investment of this nature" as "neither convincing, genuine nor authentic." Sanctions Order at 3. The Court also held that it would "entertain an adverse evidentiary inference [at trial] that Defendant consciously failed to keep or produce material records within his control that should have ordinarily been preserved" and further held that it would entertain an adverse evidentiary inference at trial that "Defendant indisputably lacks fundamental credibility on the facts and circumstances related to the Plaintiffs' claims." Sanctions Order at 4–5. The Court further ordered Plaintiffs to submit a motion for legal expenses and fees in connection with their Sanctions Motion.[2]

On March 14, 2022, Plaintiffs filed a Motion for Attorney's Fees and Expenses (ECF No. 549) pursuant to the Court's Sanctions Order. Plaintiffs moved to recover a total amount of $182,816.42, which consisted of $146,295 in attorney's fees for Plaintiff's lead counsel, $34,634.50 in attorney's fees for Plaintiff's local counsel, and $1,886.92 in expenses. By

---

[2] Defendant moved for reconsideration of the Court's Sanctions Order (ECF No. 522) on the basis that Plaintiffs could not be prejudiced by Defendant's spoliation of evidence because Plaintiffs had simultaneously maintained that they had evidence against the Defendant. The Court denied Defendant's reconsideration motion for failure to identify controlling decisions or data that the Court overlooked (ECF No. 562).

4

supplemental order dated June 3, 2022 (ECF No. 600), after a hearing to address the Defendant's objections, the Court entered its Sanctions Award granting Plaintiffs $90,464 in attorney's fees and $1,886.92 in expenses for a total award of $92,330.92. The Court's award represented a 50% reduction in the total fees sought by Plaintiff's lead counsel.[3] The Court's order provided that it would schedule a hearing for the Defendant to appear and show cause as to his ability to pay the Sanctions Award to allow the Court to determine whether Defendant would be compelled to pay all or some portion of the Sanctions Award within a date certain.

On August 17, 2022, the Court entered an order for Defendant to appear and show cause as to his ability to pay the Sanctions Award (ECF No. 604). By order dated August 29, 2022 (ECF No. 607), the Court entered a scheduling order for the show cause hearing and directed Defendant to file a sworn financial statement and the last two years of his federal tax returns by September 15, 2022.

On September 15, 2022, defense counsel Paul N. Gilmore of Updike, Kelly & Spellacy, PC filed a motion to withdraw based on Defendant's insistence on taking action that defense counsel fundamentally disagreed with under Rule 1.16 of the Connecticut Rules of Professional Conduct (ECF No. 608). Defendant also moved to extend the time to comply with the Sanctions Order and requested a continuance of the show cause hearing (ECF No. 610).

A hearing took place on September 21, 2022, during which the Court granted defense counsel permission to withdraw from representation (ECF No. 620). By order dated September 23, 2022 (ECF No. 622), the Court denied Defendant's request to extend the time to comply with the Sanctions Order and ordered Defendant to appear at a continued hearing and show cause as

---

[3] The Court further allocated the award of attorney's fees, resulting in $73,147.50 in attorney's fees and $1,882.92 in expenses awarded to Plaintiffs' lead counsel and $17,317.25 in attorney's fees awarded to Plaintiffs' co-counsel.

to why he should not be held in civil contempt, sanctioned, and/or incarcerated until he complied with the Court's order regarding submission of financial disclosures.

On October 24, 2022, over one month past the Court's deadline, Defendant finally complied with the Court's order by filing a sworn financial statement and the last two years of federal tax returns under seal (ECF No. 627). The parties appeared for a continued hearing on October 26, 2022. By this point, Defendant had retained Michael P. Berman of Berman and Sable, LLC as substitute counsel. During the continued hearing, Defendant was placed under oath and gave testimony on the substance of his financial statement, his tax returns, and the circumstances surrounding the hundreds of thousands of dollars given to him by his parents for financial investments and payment of his attorney's fees. Two additional hearings occurred on November 8, 2022 and November 18, 2022, after which the Court took the matter under advisement. The Court separately declined to impose additional sanctions on Defendant for his belated compliance with the Court's order requiring the filing of his financial disclosures (ECF No. 639). In connection with the Court's order to show cause, the Court requested proposed findings of fact and substantive legal argument regarding the standard for determining the affordability and form of a sanctions award (ECF No. 638).

On February 17, 2023, after full consideration of the parties' briefs and Defendant's testimony, the Court entered its Memorandum of Decision on Defendant's Ability to Pay Sanctions (ECF No. 661, the "Ability to Pay Decision"). The Court's Ability to Pay Decision set forth findings of fact concerning Defendant's apparent self-imposed inability to generate income, despite his professional experience deriving income from sophisticated financial dealings and his ostensibly wealthy family who repeatedly supported him financially throughout portions of his adult life, including the pendency of this Adversary Proceeding. Ability to Pay Decision at 2–9. Based on its factual findings, conclusions of law, and the record of this case, the Court concluded

that the Defendant's alleged inability to generate income and pay the Sanctions Award was self-imposed and that his financial affairs were structured "to obfuscate, conceal, and mask his abilities to legitimately generate financial resources to repay his debts." *Id.* at 10. The Court reaffirmed the Sanctions Award without modification. *Id.* at 12.

On April 3, 2023, Defendant moved to modify the Court's Sanctions Order (ECF No. 668) based on his apparent continued inability to pay. Defendant requested that he be relieved from paying the Sanctions Award in lump sum and allowed two months to report to back to the Court on his financial condition. Defendant included an affidavit as well as bank statements for several bank accounts showing his recent banking activity. During a hearing on April 12, 2023, Defendant was again placed under oath and provided testimony concerning his current financial condition. Defendant testified that he had moved from Connecticut to Florida and maintained professional licenses as a real estate and insurance broker but was unable to generate any commissions for sales of real property or insurance. He further testified that his parents had given him a check, possibly before the Court entered the Sanctions Order. He thought that the amount of the check may have been $6,000 but he was not sure. He also paid for plane tickets back and forth from Florida to Connecticut. During a continued hearing on April 17, 2023, the Court reaffirmed that it would not stay the Sanctions Order, would wait for Plaintiff's motion for a contempt order, and orally ordered Defendant to pay $10,000 towards the Sanctions Award immediately. To date, Defendant has paid nothing to Plaintiffs under the Sanctions Award.

2. **Plaintiffs' Motion for Summary Judgment**

On January 3, 2020, not long after filing their Sanctions Motion, Plaintiffs filed their Summary Judgment Motion seeking summary judgment on the first six counts of the Complaint. On February 8, 2022, after extensive briefing and considerable time spent by the Court considering the material issues before it, the Court granted summary judgment in favor of

Plaintiffs on the first six Counts of the Amended Complaint as to liability only. As part of its Summary Judgment Ruling, the Court also:

> a. declared Plaintiffs' original investment of $495,000 as a non-dischargeable debt of the Defendant pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B), (a)(4), and (a)(6); and
>
> b. denied Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A);

On the issue of damages arising from the first six Counts of the Amended Complaint, the Court ordered briefing from Plaintiffs disclosing their damages calculation within thirty (30) days. The Court has not yet determined the total amount of damages suffered by Plaintiffs related to the those Counts. The Court also deferred entry of a separate and final judgment on the first six Counts pending the outcome of further proceedings on the Plaintiffs' damages calculation and on Count VII, which was not part of the Summary Judgment Motion.[4]

### 3. Defendant's Appeals

Defendant has appealed this Court's Summary Judgment Decision (ECF No. 515), as well as the Court's denial of Defendant's Motion for Reconsideration (ECF No. 561), to the United States District Court for the District of Connecticut ("District Court"). *See* District Court Docket No. 3:22-cv-00560 (OAW). On March 3, 2023, the District Court stayed briefing of certain pending motions so that it could first decide Plaintiffs' motion to dismiss the appeal as interlocutory. The District Court has yet to render a decision on that motion.

Defendant has also appealed the Court's Sanctions Order (ECF No. 514), the Court's denial of Defendant's Motion for Reconsideration of the Sanctions Order (ECF No. 562), the

---

[4] Defendant moved for reconsideration of the Court's Summary Judgment Decision (ECF No. 520) and raised five separate arguments in support of its motion. The Court denied Defendant's motion after determining that Defendant had failed to identify any overlooked facts or legal authority that, if considered, would reasonably be expected to alter the conclusions reach by the Court in its Summary Judgment Decision (ECF No. 561).

Sanctions Award (ECF No. 600), and the Ability to Pay Decision (ECF No. 661). The District Court consolidated these appeals under Docket No. 3:22-cv-00557 (OAW). On July 27, 2023, the District Court stayed briefing on certain pending motions so that it could first decide Plaintiffs' motion to dismiss the appeals as interlocutory. The District Court has yet to render a decision on that issue.

    **4. Plaintiffs' Motion for Contempt**

On April 17, 2023, Plaintiffs filed their Contempt Motion related to Defendant's failure to pay the Sanctions Award, wherein Plaintiffs requested that Defendant be held in contempt and incarcerated until such time as he could pay the Sanctions Award. On July 5, 2023, Defendant filed his Opposition wherein he proposed that he pay $1,000 per month towards the Sanctions Award, paid under protest or under a reservation of rights to preserve his appeals, while working to obtain real estate commission payments that would enable him to fully pay the award.

The Court held a hearing on August 1, 2023, during which Defendant requested that he instead be allowed to pay $5,000 per month towards the Sanctions Award for six months, paid under protest to preserve his appeals. The Court learned during this hearing that Defendant allegedly had his parents pay the initial retainer fee to Attorney Berman and subsequently had his parents allegedly make payments of $10,000 to Attorney Berman at least five or six times since Berman was retained sometime in August 2022. After further testimony from Defendant and legal argument from both parties, the Court took the matter under advisement.

## II. DISCUSSION

In *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989), the Second Circuit established the standard for federal courts imposing civil contempt charges for violation of a court order. "A court's inherent power to hold a party in civil contempt may be

exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *Id.* at 1351.

Defendant concedes that the first and second elements of the *Terry* standard are satisfied here. He argues that Plaintiffs have failed to establish the third element because their Contempt Motion focuses on Defendant's overall character (or lack thereof), as well as his past conduct prior to the Sanctions Order, but does not show that Defendant has failed to diligently attempt compliance with the Sanctions Order.

The record of this case, however, plainly shows that Defendant has failed to diligently comply with the Court's Sanctions Order. As previously discussed, the Sanctions Award remains fully unpaid. The Court has never relieved Defendant from his obligation to comply with the Sanctions Order. Defendant has not made a single payment (in any amount) towards the Sanctions Award, despite the Court ordering him to do so months ago. Instead of reflecting diligence in complying with the Sanctions Order, the record of this case reflects Defendant's continuing delay in paying the Sanctions Award. The Court acknowledges that Defendant offered in his July 5, 2023 Opposition to pay $1,000 per month towards the Sanctions Award, but the Court finds this offer to be insufficient relative to the total amount of the award. Def.'s Opp'n at 2. Defendant had ostensibly calculated this offer based upon the small amount of base income he receives from his real estate and insurance broker positions, but his testimony during the August 1, 2023 hearing showed that his parents had given him, at a minimum, $50,000 towards his legal fees and other expenses within the last year. Defendant's most recent offer to pay $5,000 per month for six months, made during the August 1, 2023 hearing, is likewise belated and insufficient.

Further, although not every detail of Defendant's delay is stated verbatim in Plaintiffs' Contempt Motion, the Court is satisfied that Plaintiffs' argument on the undisputed facts during the hearing on the Contempt Motion is sufficient to satisfy their burden in this regard. Accordingly, the Court finds that Plaintiffs have satisfied all the elements of the *Terry* standard sufficient for this Court to hold Defendant in civil contempt for his violation of the Sanctions Order.

In his Opposition, Defendant rests on his claimed inability to pay the Sanctions Award, a defense for which Defendant bears the burden of proof. "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). "The alleged contemnor bears the burden of producing evidence of his inability to comply." *Id*. "The court is not required to credit the alleged contemnor's denials if it finds them to be incredible in context . . . although the denials may be given credit after demonstration that a period in prison does not produce the goods." *Id*. (internal quotation marks and citations omitted). "In any event, [t]he credibility of his denial is to be weighed in the light of his present circumstances." *Id*. "Further, the alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably." *Id.* Thus, "punishment may not be imposed in a civil contempt proceeding when it is *clearly established* that the alleged contemnor is *unable* to comply with the terms of the order . . . ." *Id.* (emphasis in original) (quoting *Hicks v. Feiock*, 485 U.S. 624, 638 n.9, 108 S. Ct. 1423, 1433, 99 L. Ed. 2d 721 (1988)).

In *Huber*, the Second Circuit affirmed the district court's decision to impose sanctions based on findings of fact showing that the contemnor's assertion that he was unable to pay was not credible where the contemnor refused to produce documents and the record demonstrated that he had the ability to pay other fines and finance litigation to avoid paying his student loans.

11

*Huber*, 51 F.3d at 10–11. The Court has also located several decisions from courts outside the Second Circuit involving financially sophisticated debtors, such as stockbrokers, holding that a contemnor cannot avail himself of the defense of inability to pay when the inability to pay is self-created. *See, e.g.*, *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1300 (11th Cir. 2002) (after being held in contempt for failure to comply with court's turnover order regarding trust assets in debtor's possession and control, and after being incarcerated until purge of his contempt, debtor failed to establish that it was impossible to comply with court's order after court found that debtor lacked credibility); *S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1330–33 (S.D. Fla. 2010) (Defense of inability to pay was unavailable to broker ordered to pay disgorgement following verdict of securities fraud in SEC enforcement action, since broker's claimed inability to comply was self-created; broker was diligent in his efforts to divest himself of assets that would otherwise have been available to satisfy the court's disgorgement order.); *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 23 (D.D.C. 2000) (defendant failed to adequately demonstrate his financial inability to comply with court's disgorgement order by providing inadequate documentation to establish his inability to pay).

      The Defendant's alleged financial circumstances have not changed since this Court issued its Ability to Pay Decision concluding that Defendant's inability to generate income and pay the Sanctions Award was self-created. Throughout the many hearings held on the Sanctions Motion and Contempt Motion, Defendant has failed to enhance his damaged credibility. He has made it abundantly clear that he has a history of finding money when he needs it, but appearing destitute when it suits him. Defendant's testimony, which lacks credibility, and the record of this case strongly indicate that his current lack of income and inability to pay is self-created. Accordingly, the Court finds that Defendant has failed to satisfy his burden on his defense of inability to pay.

### III. CONCLUSION

The Court concludes that Plaintiffs have satisfied their burden for the Court enter an order holding Defendant in civil contempt, and that Defendant has failed to satisfy his burden on his defense of inability to pay. Accordingly, it is hereby

**ORDERED:** That the Court hereby holds Defendant Richard Simone in civil contempt for his continued violation of the Court's Sanctions Order; and it is further

**ORDERED:** That Defendant must pay the sum of $5,000 towards the Sanctions Award by August 30, 2023 via wire transfer to Plaintiff's lead counsel, Attorney Kenneth E. Chase of Chase Law & Associates, P.A., as trustee for Plaintiffs; Defendant must file a certification upon the docket, within two (2) days of payment, that he has timely completed the wire transfer; and it is further

**ORDERED:** That Defendant must pay the sum of $5,000 towards the Sanctions Award by September 15, 2023 via wire transfer to Plaintiff's lead counsel, Attorney Kenneth E. Chase of Chase Law & Associates, P.A., as trustee for Plaintiffs; Defendant must file a certification upon the docket as provided above; and it is further

**ORDERED:** That, for the following five months (October, November, and December 2023 as well as January and February 2024) Defendant must pay the sum of $7,500 towards the Sanctions Award on or before the fifteenth of each month in the same manner as above, in good funds and with a certification to the Court as provided above; and it is further

**ORDERED:** That, no later than twenty (20) days after Defendant makes his February 15, 2024 installment payment, unless otherwise relieved by a court of competent jurisdiction, Defendant shall pay the remaining balance of $44,830.92 under the Sanctions Award in the same manner as above, in good funds and with a certification to the Court; and it is further

**ORDERED:** That, in the event Defendant fails to comply with the above payment installment schedule as provided, upon supplemental application and certification from Plaintiffs' counsel, Defendant will be directed to appear within three (3) business days at an expedited hearing before this Court and deliver himself into the custody of the United States Marshals for incarceration until such time as he is able to purge his contempt by paying the Sanctions Award in full, or as may be further modified.

Consistent with the Seventh Circuit's decision in *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041 (7th Cir. 1998), Defendant's periodic payments under this Order may be made under protest so as to reserve appropriate remedies if the orders of this Court are reversed or modified on appeal.[5]

**IT IS SO ADJUDGED, ORDERED AND DECREED** at Hartford, Connecticut this 18th day of August 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[5] "We have said that when a party or its counsel are sanctioned in the course of litigation, immediate payment of the sanction is the cost the two must bear for the privilege of continuing to litigate. The propriety of the sanction may then be challenged on appeal once there is a final decision in the case, even if that is long after the sanction was paid." *Corley*, 142 F.3d at 1057; *see also Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 CIV.6441(LAK), 2004 WL 692246, at *1 (S.D.N.Y. Apr. 2, 2004) (citing *Corley*).