**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>Richard P Simone<br><br>    Debtor. | Chapter 7<br><br>Case No. 18-21993 (JJT) |
| Andrew Woolf, Andrew Katz, and Elena Vagnerova,<br><br>    Plaintiffs,<br><br>v.<br><br>Richard P Simone,<br><br>    Defendant. | Adv. P. No. 19-02005 (JJT)<br><br>Re: ECF No. 446 |

**POSTTRIAL MEMORANDUM OF DECISION**
**ON COUNT VII OF THE FIRST AMENDED COMPLAINT**

<u>Appearances</u>
Kenneth E. Chase
Chase Law & Associates, P.A.
1141 71st Street
Miami Beach, FL 33141
*Attorney for Plaintiffs*

Richard P Simone
1600 Gulf Boulevard, 711
Clearwater, FL 33767
*Pro se Debtor–Defendant*

1. Introduction

    This adversary proceeding ("Adversary Proceeding") is related to the Chapter 7 bankruptcy case of Richard P Simone ("Debtor"). The plaintiffs, Andrew Woolf

("Woolf"), Andrew Katz ("Katz"), and Elena Vagnerova ("Vagnerova," and with Woolf and Katz, "Plaintiffs"), have accused the Debtor of duping them of a collective $495,000[1] to invest in real estate in Dubai, an investment that was never completed consistent with the Debtor's representations and inducements.

The operative complaint ("First Amended Complaint," ECF No. 446) was filed on November 23, 2020, after the Court previously granted a motion to amend the complaint (ECF No. 413). The First Amended Complaint lists seven counts, the first six of which the Court has already dealt with in its Memorandum of Decision on Plaintiffs' Motion for Summary Judgment ("Summary Judgment Decision," ECF No. 515). In the Summary Judgment Decision, the Court, among other things: (a) granted summary judgment in favor of the Plaintiffs on Counts I through VI of the First Amended Complaint; (b) determined that the principal amount of $495,000 owed to the Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6); and (c) determined that the Debtor is to be denied a discharge under 11 U.S.C. § 727(a)(3) and (a)(4)(A). The Court also stated that it would defer entry of final judgment until after determining Count VII of the First Amended Complaint.[2]

Count VII of the First Amended Complaint, the sole remaining count, seeks entry of civil judgment in favor of the Plaintiffs and against the Debtor with three components:

---

[1] The $495,000 total breaks down as follows: $225,000 from Woolf, $150,000 from Katz, and $120,000 from Vagnerova.
[2] The Court directs the parties to the Summary Judgment Decision for a thorough discussion of the parties' history and the background of this case leading up to that decision.

2

  (1)  Treble damages for theft under Fla. Stat. § 772.11 or Conn. Gen. Stat. § 52-564;

  (2)  Punitive damages for unfair or deceptive trade practices under Fla. Stat. § 501.201 or Conn. Gen. Stat. § 42-110g(a); and

  (3)  Attorney fees and costs for unfair or deceptive trade practices under Fla. Stat. § 501.201 or Conn. Gen. Stat. § 42-110g(d).

The Debtor moved to dismiss Count VII on a variety of theories (ECF No. 695), which the Court denied (ECF No. 708). Both that denial and the Summary Judgment Decision have been appealed on an interlocutory basis and are pending before the District Court.

  The Court held a trial on Count VII on April 2, 3, and 4, 2024. At the trial, the Plaintiffs disclaimed their request for punitive damages. At the conclusion of trial, the Court directed the parties to file briefs concerning the appropriate choice of law for Count VII, after which the Court would consider the filing of proposed findings of fact and conclusions of law. The parties have filed their briefs (ECF Nos. 785, 786). Having reviewed the parties' briefs concerning choice of law, the Court determines that further briefing is unnecessary.

  For the following reasons, judgment will enter for the Debtor on Count VII.

2.  Jurisdiction

  The United States District Court for the District of Connecticut has jurisdiction over these proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated

3

September 21, 1984. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). For reasons previously discussed in the Court's memorandum of decision denying the Debtor's motion to dismiss Count VII, this Court has authority to adjudicate Count VII and the Debtor has consented to such adjudication (ECF No. 708).

3.  Choice of Law

In Count VII of the First Amended Complaint, the Plaintiffs have pleaded violations of Florida law, with Connecticut law pleaded in the alternative.[3] In their memorandum of law, the Plaintiffs argue that Florida law applies (ECF No. 785). The Debtor, meanwhile, argues that New York law applies (ECF No. 786).[4]

For choice of law, federal courts sitting in diversity use the forum state's rule. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022). Connecticut courts apply the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws when evaluating choice of law for actions brought under tort and unfair trade practice theories. *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 558, 153 A.3d 574, 584 (2016). This test starts with the principles laid out in §§ 6 and 145 of that Restatement. Section 6 provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

---

[3] The Plaintiffs have made no real effort to argue in favor of Connecticut law and, for reasons obvious below, Connecticut law does not apply.
[4] The Debtor's argument is hardly surprising; he had been arguing since his answer ("Answer," ECF No. 444) that something other than Florida and Connecticut law might apply.

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

In order to evaluate the policy choices in §§ 6(2) and 145(1), Connecticut courts look to § 145(2), "which establishes black-letter rules of priority to facilitate the application of the principles of § 6 to tort cases." *W. Dermatology Consultants*, 322 Conn. at 559. Section 145(2) of the Restatement provides:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The Court addresses each of these significant contacts in turn.

First, the evidence shows that the Debtor induced the Plaintiffs to part with their money in either New York or California (with the Debtor potentially in Dubai at times), which covers both the place of the injury and the place of the conduct causing the injury occurred. Similarly, at the time the Plaintiffs parted with their money (2007 and 2008), the parties were either resident in New York (Woolf, Katz,

5

and the Debtor), California (Vagnerova), or Dubai (the Debtor).[5] The relationship between the Plaintiffs and the Debtor had several loci, including New York, California, Dubai, and (minimally) Florida—but, according to the trial record, it is centered on New York.[6] As to Woolf and Katz, the evidence demonstrates that New York had the most significant relationship to their injuries. As for Vagnerova, either New York or California law might apply, but Florida has no nexus to her injury. Thus, although the Plaintiffs cite a number of contacts with Florida, they are from before or after the injuries in question. In other words, they are not significant.[7] Neither does § 6(2) of the Restatement even suggest application of Florida law to this dispute. *Cf. W. Dermatology Consultants*, 322 Conn. at 560–62 (comparing the unfair trade practices acts of Connecticut and New Mexico).[8]

Because neither Florida nor Connecticut law applies, the question then shifts to the proper course of action. In Connecticut:

---

[5] As far as the Court can tell, Vagnerova's nationality played no part in her contact with the Debtor.
[6] Even the Debtor's relationship with Vagnerova began in New York before she moved to California.
[7] Of all the Florida contacts cited by the Plaintiffs in their brief, only the May 23, 2016 telephone call has any significance to this adversary proceeding. In that call, the Debtor and Woolf (while in New York) spoke to Katz and his spouse (who were in Florida). The false statements made in that call, however, are not relevant to the location of the 2007 and 2008 thefts of the Plaintiffs' funds. Instead, that call was relevant to the course of conduct that led to the determination that the Debtor would be denied a discharge.

The Court also notes that both the Plaintiffs' and the Debtor's briefs treat the choice of law analysis like a counting exercise, refusing to engage in an analysis of the various contacts. But "it is the significance, and not the number, of § 145(2) contacts that determine the outcome of the choice of law inquiry[.]" *W. Dermatology Consultants*, 322 Conn. at 560.

Finally, the Plaintiffs recite the elements of a Florida civil theft claim from various cases. But what the Plaintiffs ignore is the statute itself, which requires a violation of specific Florida criminal statutes. Implicit in this requirement is that the Debtor commit one of the specified crimes *in Florida*, which the evidence does not show, whether by clear and convincing evidence—which the statute requires—or a preponderance of the evidence.

[8] The Court adopts the Connecticut Supreme Court's reasoning with regards to the relevant states' unfair trade practices acts here and find that it equally applies to the civil theft claim.

>when a plaintiff alleges a statutory cause of action, and the defendant argues successfully on appeal that another state's statutory law governs the plaintiff's claim, the proper remedy is to render judgment in favor of the defendant without prejudice to the plaintiff's commencement of a new action under the correct state's law[.]

*Id.* at 564. Some federal courts have done likewise when the wrong state's unfair trade practices act was applied by the trial court. *See, e.g., Santana, Inc. v. Levi Strauss & Co.*, 674 F.2d 269, 274 (4th Cir. 1982).[9] Entering judgment for the Debtor on Count VII is also consistent with District Court practice.[10]

Commencing a new action here, however, is not possible at this stage because the Court would not have jurisdiction over a standalone Count VII, especially after final judgment has entered on Counts I through VI.[11] *See Surgical Capital Solutions, Inc. v. Awaisi (In re Awaisi)*, 627 B.R. 886 (Bankr. E.D. Mich. 2021) ("the Court's authority and subject matter jurisdiction to enter a money judgment . . . [i]s dependent on its statutory authority, under 28 U.S.C. § 157(b)(2)(I), to determine the dischargeability Defendant–Debtor's debt to Plaintiff"); *cf. Porges v. Grunal & Co. (In re Porges)*, 44 F.3d 159, 164 (2d Cir. 1995) ("once a court sitting in equity has jurisdiction over the parties to a controversy brought before it, the court can decide all disputed matters and decree complete relief").

---

[9] Although this is not an action on appeal, this framework shows that, were the Court to find that Florida law applies and an appellate court to reverse, this Court would be faced with the Plaintiffs commencing a new action with only Count VII as opposed to allowing the Plaintiffs to amend their complaint.

[10] Faced with a choice of law question on summary judgment, a District Court in this state determined that, because New York law applied instead of Connecticut law, it had to grant summary judgment on the plaintiffs' unfair trade practices claim. *Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 406 F. Supp. 2d 175, 199–201 (D. Conn. 2005).

[11] Moreover, the applicable statutes of limitations have likely passed.

7

Does the Court then allow the Plaintiffs to amend their pleadings? No. The Court is not required at this stage to allow the Plaintiffs to do so. *See* Fed. R. Civ. P. 15(b). Coupled with this is the fact that the Debtor brought the choice of law issue to the Plaintiffs' attention in his Answer, *which was filed three-and-a-half years ago*. It would be prejudicial, now that the trial is over, to allow the Plaintiffs to amend their complaint when they have been on notice for so long that their chosen laws might be incorrect.[12]

There is, in short, no effective claim for the additional elements of damages sought in Count VII.[13] Thus, based upon Connecticut choice of law principles and the practice of Connecticut and federal courts, the Debtor must prevail on Count VII.

To be clear, the Court determined in its Summary Judgment Decision that the principal amount of $495,000 collectively owed to the Plaintiffs was nondischargeable. Despite entering judgment for the Debtor on Count VII, the Court will nonetheless enter a supplemental judgment for the Plaintiffs for the principal amount owed to each of them because the process of resolving the nondischargeability question necessarily resolved questions concerning the

---

[12] It would also contradict the spirit of *Western Dermatology Consultants*, *Santana*, and *Victor G. Reiling*, each of which mandated (or at least chose) judgment on the relevant count.
[13] Alternatively, even applying New York or California law does not necessarily result in treble damages or attorney fees and costs. First, there does not appear to be a statutory analog in New York law to Fla. Stat. § 772.11. And, although California does have a civil theft statute, Cal. Penal Code § 496(c), that would only (potentially) apply to Vagnerova. As for attorney fees under an unfair trade practices act, although New York law gives a court discretion to award them where a plaintiff prevails on an unfair trade practices claim, N.Y. Gen. Bus. L. § 350-e(3), and California mandates it, Cal. Bus. & Prof. Code § 17082, the Plaintiffs did not specifically allege the elements of a predicate unfair trade practice action upon which they might have prevailed, merely stating that the Debtor was liable for attorney fees and costs without more.

principal amount of debt. *Cf. Stern v. Marshall*, 564 U.S. 462, 495–99 (2011). That the First Amended Complaint asks in the prayer for relief for a civil judgment in the principal amount and for "such other and further relief as this Court may deem just and proper" is enough for this Court to enter such a money judgment here. *See Grad v. Benham (In re Benham)*, No. 05-CV-3506 (ADS)(ARL), 2006 WL 8439615, at *9 (E.D.N.Y. Dec. 29, 2006) (entering money judgment "was proper in this case even though [the plaintiff] failed to expressly ask for a money judgment in his adversary complaint").[14]

4. Conclusion

Judgment shall enter for the Debtor on Count VII of the First Amended Complaint, but a supplemental money judgment will nonetheless enter on the principal amount owed to each of the Plaintiffs in connection with the Court's final disposition on Counts I through IV. A separate, final judgment that incorporates the elements of this decision and the Summary Judgment Decision will enter upon the docket.

IT IS SO ORDERED at Hartford, Connecticut this 20th day of June 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[14] The Plaintiffs' sole claim for interest in the First Amended Complaint, however, is for prejudgment interest, which the Plaintiffs stated in their posttrial brief (ECF No. 785) was based upon Florida law and therefore does not apply. No other pre- or postjudgment interest will be awarded.